Randall T. GREGORY, et al, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 84–1124–CIV–5.

United States District Court, E.D. North Carolina, Raleigh Division.

May 29, 1986.

J. David James, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N.C., for plaintiffs.

Samuel T. Currin, U.S. Atty., Raleigh, N.C., Betsy E. Burke, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter comes before the court upon the plaintiffs' and defendant's motions and cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This action was commenced in September, 1984 by plaintiffs, members of the Communications Workers of America (C.W.A.), and their respective spouses, who received strike benefits during a 1979 C.W.A. strike.

The strike was conducted against Carolina Telephone and Telegraph Company by members of the four North Carolina C.W.A. locals. The strike began on October 1, 1979 and the union members were out for approximately two months when the strike ended on or about November 29, 1979. Since 1954 the C.W.A. has accumulated a Strike Defense Fund. Under the union rules this fund was established and is maintained by a fifty-cent per capita, per month allocation from membership dues. During the strike, the union disbursed Defense Fund monies for strike activities and to union members for their own use. All of the plaintiffs are members of the C.W.A. who were on strike and received money from the union through its Defense Fund during the strike and who claim that this was a non-taxable gift from the C.W.A. Union dues are deductible from taxable income pursuant to IRC § 162 if the taxpayer itemizes.

In February of 1983 the Internal Revenue Service (IRS) made assessments against the named plaintiffs and served them with notices of deficiency claiming that the strike benefits, which the taxpayers had treated as gifts, were taxable income. Plaintiffs paid the taxes as a jurisdictional prerequisite to challenge the United States on the taxability of the strike benefits. An administrative claim was also filed and subsequently denied.

The original complaint in this action alleged three claims. The plaintiffs' Second Claim alleged that they had relied to their detriment upon the initial position taken by the IRS that the strike benefits were not taxable income. In an order filed January 27, 1986 this court allowed defendant's motion for partial summary judgment as to the plaintiffs' Second Claim. The current motions concern the plaintiffs' First and Third Claims for Relief. In the First Claim plaintiffs allege that the strike benefits are gifts under IRC § 102(a) and, as such, are not taxable. The Third Claim alleges that plaintiffs were treated in a way different from similarly situated individuals who received strike benefits in 1979 and, therefore, the United States is barred by the doctrine of collateral estoppel from asserting that strike benefits are taxable. Both parties have moved for summary judgment on these remaining claims.

1. PLAINTIFFS' FIRST CLAIM FOR RELIEF

The only issue before the court with respect to the plaintiffs' First Claim for Relief is whether the strike benefits received by the plaintiffs constitute taxable income. Plaintiffs claim that the strike benefits paid by the C.W.A. were gifts within the meaning of IRC § 102(a) and, therefore, are not includable as gross income under IRC § 61.

■ The parties disagree as to certain facts set forth in the memoranda accompanying their motions. However, summary judgment is appropriate where "there is no genuine issue as to any *material* fact." Rule 56, Federal Rules of Civil Procedure. Whether a transfer qualifies as a gift for income tax purposes depends on the intent of the transferor. *Commissioner v. Duberstein*, 363 U.S. 278, 285, 80 S.Ct. 1190, 1196, 4 L.Ed.2d 1218 (1960). In the present case, the facts in dispute involve the exact dollar amount of the benefits and the use which various plaintiffs made of these benefits. The court finds that these disputed facts are not material since they do not bear on the central issue of the taxability of the strike benefits. Therefore, for the

purpose of these summary judgment motions, the court will assume that plaintiffs' Statement of Uncontested Facts is true.

■ The intent of the transferor is the critical question in determining whether a transfer qualifies as a gift under IRC § 102(a). For the transfer to constitute a gift, the surrounding facts and circumstances must show that the gift proceeds from a "detached and disinterested generosity," *Commissioner v. LoBue*, 351 U.S. 243, 246, 76 S.Ct. 800, 802, 100 L.Ed. 1142 (1956); *Commissioner v. Duberstein, supra* 363 U.S. at 285, 80 S.Ct. at 1196, or "out of like impulses" on the part of the transferor, *Robertson v. United States*, 343 U.S. 711, 714, 72 S.Ct. 994, 996, 96 L.Ed. 1237 (1952). Further, the mere absence of a legal or moral obligation to make such a payment does not establish that it is a gift. *Commissioner v. Duberstein, supra*, 363 U.S. at 285, 80 S.Ct. at 1196. "And, importantly, if the payment proceeds primarily from 'the constraining force of any moral or legal duty,' or from 'the incentive or anticipated benefit' of an economic nature, [citations omitted] it is not a gift." *Id.*

The plaintiffs rely almost exclusively upon *United States v. Kaiser*, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960), wherein the Supreme Court upheld a jury finding that strike benefits in the form of food vouchers to a nonunion worker without income due to the union's strike constituted gifts excludable under § 102(a). The Court in *Kaiser* "was reviewing the evidence only to determine whether it was sufficient to support the outcome." *Woody v. United States of America*, 368 F.2d 668 (9th Cir.1966). *Kaiser* cannot be read to hold that strike benefits are nontaxable gifts as a matter of law. The Court stated:

"We need not stop to speculate as to what conclusion we would have drawn had we sat in the jury box rather than those who did. The question is one of the allocation of power to decide the question; and once we say that such conclusions could with reason be reached

on the evidence, and that the District Court's instructions are not overthrown, our remaining authority is exhausted and we must recognize the jury was empowered to render the verdict which it did." *United States v. Kaiser, supra* 363 U.S. at 303–304, 80 S.Ct. at 1206–1207.

The facts in *Kaiser* are clearly distinguishable from the facts in the instant case. All named plaintiffs in the case at bar were union members, while the taxpayer in *Kaiser* did not belong to the union and never paid union dues. In *Kaiser* the union had no obligation to make payments to a nonunion employee who made no contributions to the union and voluntarily supported the strike. In *Kaiser* the taxpayer was not required to perform strike duties. Here, the union solicited strike duty assistance directly on the application for strike benefits. Applicants for strike benefits were therefore encouraged to participate in the strike duties in return for their benefits.

The court is aware of no case subsequent to *Kaiser* that has held strike benefits to be nontaxable gifts. There are numerous cases where *Kaiser* was distinguished and strike benefits were held to be includable as gross income under IRC § 61. *Woody v. United States,* 368 F.2d 668 (9th Cir. 1966); *McConnell v. United States,* 70–2 U.S.T.C. par. 9467 (E.D.Tenn.1970); *Halsor v. Director of Internal Revenue,* 240 F.Supp. 738 (D.Minn.1965); *Godwin v. United States,* 15 A.F.T.R.2d 258 (W.D. Tenn.1964); *Placko v. Commissioner,* 74 T.C. 452 (1980); *Colwell v. Commissioner,* 64 T.C. 584 (1975); *Brown v. Commissioner,* 47 T.C. 399 (1967); *Hagar v. Commissioner,* 43 T.C. 468 (1965); *Stone v. Commissioner,* T.C.M. (P–H) par. 85–544 (1985); *Jernigan v. Commissioner,* T.C.M. (P–H) par. 68–268 (1968). All of these cases refer to the legal standards set forth in *Duberstein* by the Supreme Court for determining excludable income as gifts.

In this case the facts establish that the C.W.A. provided strike benefits to encourage support of the strike. These payments to union members were not made with "de-tached and disinterested generosity." The C.W.A. Defense Fund Rules and Local Defense Fund Ground Rules clearly state the purpose of the Defense Fund:

Part I. Purpose of the CWA Defense Fund

A. The purpose of the Defense Fund shall be the defense and relief of the Union, its Locals, their members, officers and agents when circumstances arising out of labor disputes make such defense and relief necessary.

\*   \*   \*   \*   \*   \*

Part II. Maintenance of the Fund

B. The Defense Fund was established and is maintained by a 50–cent per capita per month allocation from C.W.A. membership dues.

The court notes that in addition to the strike benefits at issue the monies which fund the C.W.A. Defense Fund are designated to also pay strike-related expenditures including "[n]ecessary placards, arm bands, handbills and picket line coffee."

The Defense Fund Rules further state that the benefits will be paid to "protect our members from loss of shelter, utilities, home furnishings, cars, medical and insurance coverage, and hardships occasioned by insufficient food and fuel."

The union's payment of defense fund monies to its members, while they were participating in a strike, under these circumstances does not indicate a donative intent. The payments to the plaintiffs by the C.W.A. were not motivated by "affection, respect, admiration" or "charity" for the plaintiffs. Nor did the payments proceed from a "detached and disinterested generosity." The payments were made by a labor union of which all plaintiffs were members in good standing. The payment of such benefits act to encourage a strike vote and to promote strike objectives as opposed to a "detached and disinterested generosity" characteristic of donative intent. *See, Hagar v. Commissioner,* 43 T.C. 468 (1965). Moreover, the plaintiffs, as union workers, have an obligation to pay union dues when they join the union. A

part of these dues goes to the Defense Fund. The union, on the other hand, has an obligation to act in the best interest of its members and act in furtherance of its collective purpose. That payments of this nature were contemplated by the union is self-evident from the Defense Fund Rules. By striking, the union members act in furtherance of the union's goals. The union, for its part, encourages the strike by paying strike benefits and easing the financial strain caused by the subsequent lack of work. While the court is not prepared to state that the C.W.A. was under a legal obligation to make the payments in question, the court is convinced that it was in the overall business interest of the C.W.A. to pay these benefits and there may have been a moral obligation to pay benefits. This fact alone is sufficient to prevent payments from constituting gifts under the tax laws. *Commissioner v. Duberstein, supra* 363 U.S. at 285, 80 S.Ct. at 1196. It is also important to point out that under the C.W.A. Defense Fund Rules strike assistance is only available during strikes. As noted in *Stone v. Commissioner,* T.C.M. (P–H) par. 85–544 at 85–2437, the assistance provided here is "more consistent with the union's use of benefit payments to influence its members' attitudes toward contract negotiations than with a charitable impulse or detached and disinterested generosity."

Moreover, "the issuance by the union of a Form 1099 to [the plaintiffs] in the amount of the benefit payments further indicates that the union did not intend the out-of-work benefits to be gifts but treated them as income to the plaintiffs." *Stone v. Commissioner, supra* at 85–2438. In the case at bar, the Local Defense Fund Ground Rules require that the "local shall furnish each member two copies of Federal Internal Revenue Form 1099 showing in dollars and cents the amount of Defense Fund assistance if there have been payments or benefits of over $600 to the member." The C.W.A.'s issuance of the Form 1099 is clear evidence of the union's intention that these payments were not gifts, but taxable income and "the Supreme

Court has stated that 'what controls is the intention with which payment, however voluntary, is made.' " *Id.* at 85–2439, quoting *Bogardus v. Commissioner,* 302 U.S. 34, 45, 58 S.Ct. 61, 66, 82 L.Ed. 32 (1937).

■ For the above reasons the court finds as a matter of law that the payments received by the plaintiffs from the C.W.A. during 1979 were includable in their gross income in that year rather than excludable as gifts under IRC § 102(a). Therefore, defendant's motion for summary judgment as to the plaintiffs' First Claim for Relief must be allowed.

## 2. PLAINTIFFS' THIRD CLAIM FOR RELIEF

In their Third Claim for Relief the plaintiffs allege that under identical circumstances similarly situated members of C.W.A. local unions in states other than North Carolina received strike benefits in 1979 and that the IRS agreed that those benefits did not constitute taxable income. Plaintiffs rely upon Article I, § 8 of the United States Constitution which requires the tax laws to be administered in a uniform fashion throughout the federal system, and on the doctrine of collateral estoppel.

The plaintiffs cite no cases to support their allegation that the defendant violated Article I, § 8 of the United States Constitution. Even before the enactment of the Sixteenth Amendment in 1913, it was a well-settled principle of law that this constitutional clause only requires geographical uniformity and does not require equal application of tax coming within its operation. *Flint v. Stone Tracy Company,* 220 U.S. 107, 158, 31 S.Ct. 342, 351, 55 L.Ed. 389 (1910); *see also, Knowlton v. Moore,* 178 U.S. 41, 20 S.Ct. 747, 44 L.Ed. 969 (1900); *Billings v. United States,* 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596 (1914).

■ As to their allegation that the United States is barred by the doctrine of collateral estoppel from asserting the strike benefits are not taxable income, the plaintiffs rely on the case of *Pamela Mul-*

*liken v. Commissioner of Internal Revenue*, No. 24987–82S, United States Tax Court (dismissed July 6, 1983), wherein the Commissioner conceded the issue pertaining to strike benefits prior to trial. The court finds that the doctrine of collateral estoppel does not apply to the present case. In *Mulliken* the Commissioner simply relied upon representations made by the taxpayer and the union that the strike benefits were identical to *Kaiser*. This court has found that the facts in the present case are distinguishable from those in *Kaiser*. The doctrine of collateral estoppel "is not a bar to the correction by the Commissioner of a mistake of law." *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 183, 77 S.Ct. 707, 709, 1 L.Ed.2d 746 (1956). Moreover, the issue in *Mulliken* was never litigated, and a factual investigation was never performed. In the present case the IRS has performed an examination as to the plaintiffs and has determined the strike benefits are not analogous to *Kaiser*. *Luray v. Commissioner*, T.C.M. (P–H) par. 78–488 (1978) (IRS was not collaterally estopped from raising an issue, conceded as to other taxpayers, for reason that the issue had not been judicially determined). The court, therefore, finds that the doctrine of collateral estoppel does not apply to this action and the defendant's cross-motion for summary judgment as to the plaintiffs' Third Claim for Relief must be allowed.

## 3. CONCLUSION

Upon the foregoing, the court hereby ORDERS that the defendant's motion for summary judgment on the plaintiffs' First Claim for Relief and cross-motion for summary judgment on the plaintiffs' Third Claim for Relief pursuant to Rule 56 of the Federal Rules of Civil Procedure are ALLOWED.