**Reverend Lloyd L. GOODWIN and Martha J. Goodwin, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 4–92–CV–10796.**

United States District Court,
S.D. Iowa,
Central Division.

Oct. 12, 1994.

Glenn Goodwin Finley, Alt, Smith, Scharnberg, May & Craig, Des Moines, IA and Richard Hammar, Springfield, MO, for plaintiffs.

Tracy Anagnost Martinez, Dept. of Justice, Tax Div., Special Litigation, Washington, DC and Christopher Hagen, Asst. U.S. Atty., Des Moines, IA, for defendant.

**ORDER**

LONGSTAFF, District Judge.

This matter is before the court on a stipulated record and cross motions for summary judgment. Although oral argument was requested, the court finds the matter fully briefed and that oral argument is not necessary.

**I. STIPULATED FACTS**

The stipulation of facts made by the parties are adopted and incorporated here. Only part of the stipulated facts are restated.

Lloyd Goodwin was the pastor of the Gospel Assembly Church (Church) in Des Moines, Iowa, at times relevant to this action. He assumed these duties in 1963. Martha Goodwin is his spouse. Lloyd Goodwin receives an annual salary from the Church and reports this as taxable income. As pastor, he is also provided with a parsonage and an automobile.

In 1987, Goodwin's salary was $7,800; in 1988 it was $14,566; and $16,835 in 1989. The value of the parsonage is set at $6,000 per years which was reported on plaintiffs' income tax in addition to the salary.

Soon after Goodwin became pastor at the church, members of the congregation began collectively giving them "gifts" at Christmas. At some point during the years 1966 through 1974, this evolved into the giving of "gifts" on three separate days of each year; their birthdays (which are about the same time of

year); Christmas, and the anniversary of Reverend Goodwin's becoming pastor at the Church.

For approximately the first five years, congregational members contributed money and bought items for the plaintiffs, such as luggage, a lamp, a chair, and pictures for their home. As it became more difficult to select items for the plaintiffs, the gifts evolved into giving cash around 1974.

About two weeks before the "special occasion," the associate pastor makes an announcement prior to the commencement of a church service that he will be collecting money for the "special occasion" gift. Plaintiffs are not present in the sanctuary during this announcement. This is generally the only announcement made regarding the gift. If people wish to donate, they place the money in an envelope and give it to the associate pastor or one of the deacons who forwards the money to the associate pastor. The money is never placed in the contribution dishes passed during the service. Only cash is accepted. Any checks received are returned in order to maintain anonymity. The money is not counted, and is not recorded in the church book or records.

All members of the Church deposed or interviewed maintain that the "special occasion gifts" are gifts given to the plaintiffs out of love, respect, admiration and like impulses and are not given out of any sense of obligation or any sense of fear that the pastor will leave their parish if he is not compensated beyond his yearly salary.

In 1991, plaintiffs' income tax returns for 1987 through 1989 were audited by the Internal Revenue Service. As a result of the audit, a deficiency of $13,918 was assessed against the plaintiffs.[1] Plaintiffs paid this amount plus interest, and filed a claim for refund. This claim was disallowed on or about November 16, 1992.

Plaintiffs filed this action November 25, 1992, to recover these amounts, asserting this court's jurisdiction pursuant to 28 U.S.C. 1346(a)(1). Plaintiffs argue the amounts assessed as a deficiency were only an accumulation of small gifts and are excludable from income.

## II. DISCUSSION OF APPLICABLE LAW

Under 26 U.S.C. § 61(a), gross income includes all income from whatever source derived, unless specifically excluded by a provision of the Code. Under 26 U.S.C. § 102(a), "gross income does not include the value of property acquired by gift, bequest, devise, or inheritance." Thus the issue presented in this case is whether the "special occasion gifts," which were in the form of cash and given to the plaintiffs by members of the church are "income" which is taxable under the Internal Revenue Code or are gifts and are specifically excluded from income.

The cornerstone case for determining whether a transfer is a gift is *C.I.R. v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). According to *Duberstein*, a gift is a payment which "proceeds from a detached and disinterested generosity, out of affection, respect, admiration, charity or like impulses." *Id.* at 285, 80 S.Ct. at 1197 (citations omitted). Further, the most critical consideration is the transferor's intentions. *Id.* at 285–86, 80 S.Ct. at 1196–97. However, "the donor's characterization of his action is not determinative— ... there must be an objective inquiry as to whether what is called a gift amounts to it in reality." *Id.* at 286, 80 S.Ct. at 1197. The examining court must also determine "what the basic reason for [the donors'] conduct was in fact—the dominant reason that explains [the donor's] action in making the transfer." *Id.* Finally, the Court rejected any specific or rigid definition of the term "gift" as used in the statute, and instead held that the determination of whether a transfer is a gift "must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case." *Id.* at 289, 80 S.Ct. at 1198.

With this background the court must determine whether the money transferred to the Goodwins was subject to income tax.

1. The deficiency was calculated as follows: $5,125 for 1987, $4,203 in 1988, and $4,590 in 1989.

There is no dispute that the Goodwins and the members of the congregation shared a long and beloved relationship, and that the transfers were based on this relationship. The determination, then is based on objective inquiry as to whether what is called a gift amounts to it in reality.

### Compensation on its Face

The total amounts received as gifts actually exceeded Pastor Goodwin's salary for the three years audited.[2] The government argues this comparison suggests the church was adjusting the taxpayers' compensation in light of the special occasion gifts received during the years. Nonetheless, the government stipulated to the fact that none of this money was counted, recorded, or accounted for in the church records or by church personnel. Without this information, the church board could not have adjusted Goodwin's salary to account for the cash transfers. In fact, Goodwin's salary was raised even though the amount collected for "special occasion gifts" also increased. The government's argument on this issue is not persuasive.

Even so, other factors must be examined to determine whether the transfers are excludable from gross income.

### Method of Collection

The manner in which the payments were collected raises concern. When the practice of remembering the Goodwins on these special occasions first began around 1964, it involved only some of the members of the congregation. Giving a special occasion gift at that time required a group of members to meet outside of church time to choose a particularly suitable gift for the Goodwins. These items included luggage, a chair, and works of art.

By 1987, however, the practice had become fairly routine and established. Shortly before each "special occasion," an announcement was made before the beginning of each of the services by the associate pastor. Envelopes were provided for the members to place their contributions in before giving them to the associate pastor or the deacons. Members were approached only before the services, not in their homes or other places away from the church. These transfers were facilitated by and through church personnel, and would not have arose absent the Goodwins' relationship with the congregation.

Plaintiffs argue otherwise. It is their position that if the special occasion gifts actually were tied to support for the pastor, then such transfers would have begun immediately after Goodwin assumed his pastoral role in 1963. Further, no gifts would be made to Mrs. Goodwin. Neither of these arguments is persuasive. The special occasion gifts began approximately two years after Goodwin became pastor. Not later than 1974, the special occasion gifts were given in the form of money and were solicited and handled in a regular and routine manner. Whether a donation is considered income is not contingent upon the donation occurring immediately upon assumption of duties. Further, the fact that Mrs. Goodwin also received these gifts does not necessarily indicate the independence of the transfers from the relationship to the church. Money collected at the time of Goodwin's anniversary with the congregation is tied directly and is dependent upon the relationship with the congregation.

### Identity of Transferor

Plaintiffs also argue that the "special occasion gifts" are merely the aggregate of individual contributions, supporting their position that the transfers were personal from each member rather than a transfer from Goodwin's employer. The total transfer on any given special occasion may be as much as $5,000. Plaintiff suggests that when divided by the number of members in the congregation, each parishioner is only giving approximately $12.50. As noted by plaintiffs, the amount of the transfer is not relevant to the determination of whether these transfers are gifts or taxable compensation. Plaintiffs' Brief at 9.

2.

| Yearly | Salary | Special Occasion Gifts | Yearly | Salary | Special Occasion Gifts |
|--------|--------|------------------------|--------|--------|------------------------|
| | | | 1988 | $14,566.00 | $14,500 |
| 1987 | $ 7,800.00 | $12,750 | 1989 | $16,835.00 | $15,000 |

While the transfers originated with individuals, these transfers were not individual gifts. The transfers were initiated, sponsored, collected and distributed by the congregation as an aggregate body. Even though the money was never counted or recorded, the transfers were processed through the congregation. The transfers to the Goodwins were not detached or disinterested in the same way as an individual who chooses to send the pastor and his wife ten dollars on a birthday or during the Christmas season.

### Banks v. Commissioner

In their briefs, both parties address a case with similar facts, *Banks v. Commissioner*, T.C.Memo. 1991–641, 1991 WL 273741 (1991). The church members in *Banks* regularly made payments "as a result of a highly organized program to transfer cash from church members to petitioner" on four "special" days each year. These days were the pastor's birthday, Christmas, Mothers' Day, and the church's anniversary. These contributions were in addition to what the members gave for regular offerings to the church. The *Banks* court also noted that some of the members believed they were pressured into making these special day contributions, as they were told "failure to pay the pledge was like going back on his word to God."

There is no evidence of coercion or undue influence exerted on the parishioners to make these extra donations to the Goodwins. For this reason, plaintiffs argue *Banks* is distinguishable. However, that was not the primary basis for finding that the transfers represented income rather than gifts. Instead the court focused on the fact that members made the transfers because Banks was a good pastor, out of appreciation for her, and because she had served them well. The court also considered the sophisticated collection structure of the special gifts. Based on these factors, the Tax Court held that the special occasion transfers were in consideration for services rendered.

The factors which were determinative in *Banks* are also present here. This congregation made transfers to its pastor because it loved and wanted to show its affection to its pastor. It meant for the pastor and his family to have extra cash for items they might not ordinarily purchase or be able to afford. Although an honorable transfer, it was intended to increase the compensation to the Goodwins.

Unlike *Banks,* the transfers were clearly motivated by love and affection, but as in *Banks,* the transfers hinged on Goodwin's relationship with his congregation.

### Conclusion

These transfers occurred regularly three times a year for fifteen years. The transfers were organized and achieved through the use of congregation resources. Considering the totality of the facts of this case, the donations made on these occasions under these circumstances demonstrate that the transfers were directly connected to and contingent upon the pastor's relationship with his congregation. The transfers were not detached or disinterested, and are, therefore, taxable income of the plaintiffs.[3]

## III.  CONCLUSION

Plaintiffs' Motion for Summary Judgment (Pleading # 18) is **denied;** defendant's cross-motion for Summary Judgment (Pleading # 21) is **granted.**

The United States shall submit to the plaintiffs, within thirty days of the date of this order, a proposed recomputation of the plaintiffs' income tax liability for tax years 1987 and 1988 based upon additional income amounts of $12,750 for 1987 and $14,500 for 1988, as agreed by the parties. Upon approval of the recomputation by the plaintiffs, the United States shall cause a refund of the income tax overpaid by the plaintiffs for tax years 1987 and 1988, plus statutory interest accruing from the date of payment, to issue.

---

**3.** In finding that these transfers are taxable income to the plaintiffs, the court does not hold that a congregation may never show their affection or appreciation through a cash or in-kind transfer. *See Peters v. Smith,* 221 F.2d 721 (3rd Cir.1955) (transfer made to retired employee to show good will, esteem or kindliness); *Abernethy v. C.I.R.,* 211 F.2d 651 (D.C.Cir.1954) (amount paid to retired pastor by church as token of gratitude and appreciation was a gift rather than taxable income).

Upon payment of the refund of income tax and statutory interest due plaintiffs, the parties shall execute and file a Satisfaction of Judgment in this matter.

IT IS SO ORDERED.