Reverend Lloyd L. GOODWIN; Martha J. Goodwin, Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 94–3796.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1995.

Decided Oct. 4, 1995.

Glenn Goodwin, argued, Des Moines, IA (Richard Hammar, on the brief), for appellants.

Teresa McLaughlin, argued, Washington, D.C. (Gary R. Allen and Annette M. Wietecha, on the brief), for appellee.

Before LOKEN and LAY, Circuit Judges, and VAN SICKLE,* District Judge.

LOKEN, Circuit Judge.

The Reverend and Mrs. Lloyd L. Goodwin appeal the denial of a refund of income taxes they paid on substantial payments received from members of Reverend Goodwin's congregation. The district court[1] upheld the Commissioner of Internal Revenue's decision that the payments were taxable income, not excludable gifts. *Goodwin v. United States,* 870 F.Supp. 265 (S.D.Iowa 1994). We reject

---

* The HONORABLE BRUCE M. VAN SICKLE, United States District Judge for the District of North Dakota, sitting by designation.

1. The HONORABLE RONALD E. LONGSTAFF, United States District Judge for the Southern District of Iowa.

the government's proposed standard for resolving this question but nonetheless affirm the district court's decision.

## I.

When Reverend Goodwin became pastor of the Gospel Assembly Church in Des Moines, Iowa (the "Church"), in 1963, it had a modest congregation of twenty five members. Under Goodwin's stewardship, the congregation has grown to nearly four hundred persons. During the three tax years at issue, 1987 through 1989, Goodwin's annual salary from the Church was $7,800, $14,566 and $16,835; he also received a Church parsonage valued at $6,000 per year. The Goodwins reported these amounts on their joint income tax returns.

In 1966, members of the Church congregation began making "gifts" to the Goodwins, initially at Christmas and later on three "special occasion" days each year. At first, the contributors purchased items such as furniture and works of art. But after five years, they began to give cash. By 1987, the congregation had developed a regular procedure for making special occasion gifts. Approximately two weeks before each special occasion day, the associate pastor announced—before Church services, when the Goodwins were not present—that those who wish to contribute to the special occasion gift may do so. Only cash was accepted to preserve anonymity. Contributors placed the cash in envelopes and gave it to the associate pastor or a Church deacon. The associate pastor then gathered the cash and delivered it to the Goodwins. The Church did not keep a record of the amount given nor who contributed to each gift. The Goodwins did not report the special occasion gifts as taxable income.

For the tax years 1987–1989, the Commissioner estimated that the Goodwins received $15,000 in "special occasion gifts" each year. The Commissioner assessed deficiencies for the 1987–1989 tax years based upon the estimated unreported special occasion gifts. The Goodwins paid the deficiencies and filed this refund suit in district court, requesting a jury trial. See 28 U.S.C. §§ 1346(a)(1), 2402. The parties filed cross-motions for summary judgment and a lengthy stipulation that included the following agreed facts:

33. There is no formal written policy or requirement that anyone contribute to the "special occasion gift."

34. No Church member is counseled to give, or encouraged to give specific amounts.

38. All members of the Church deposed or interviewed maintain that the "special occasion gifts" are gifts given to the [Goodwins] out of love, respect, admiration and like impulses and are not given out of any sense of obligation or any sense of fear that [Reverend Goodwin] will leave their parish if he is not compensated beyond his yearly salary.

42. Church members who were deposed or interviewed ... did not deduct the money they gave the [Goodwins] as a charitable contribution to the Church.

47. The Church trustees, who set [Goodwin's] annual compensation, will testify that they do not know the amount of the "special occasion gifts" received and do not consider those "gifts" in setting his annual compensation.

The district court granted summary judgment in favor of the government, concluding that the special occasion gifts are taxable income to the Goodwins. However, because the parties stipulated and the district court found that the payments totaled $12,750 in 1987, $14,500 in 1988, and $15,000 in 1989, rather than $15,000 each year, as the Commissioner had estimated, the court ordered the government to redetermine the Goodwins' tax liability for 1987 and 1988 and to refund what they had overpaid. The court's order concluded: "Upon payment of the refund of income tax and statutory interest due [the Goodwins], the parties shall execute and file a Satisfaction of Judgment in this matter." 870 F.Supp. at 269.

The Goodwins appeal, supported by a brief *amicus curiae* from The Rutherford Institute. They present two related arguments, that the undisputed evidence of the individual Church members' donative intent proves that the special occasion gifts are not taxable income to the Goodwins, and alternatively that summary judgment was improperly

granted because donative intent is a question of fact for the jury.

## II.

The government initially argues that we lack jurisdiction under 28 U.S.C. § 1291 because the Goodwins have appealed a nonfinal order. The order is not final, the government suggests, because the judgment entered on that order did not fix the amount of partial refunds due for 1987 and 1988.[2] In *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 234, 78 S.Ct. 674, 678–79, 2 L.Ed.2d 721 (1958), a tax refund suit, the Supreme Court observed, "an opinion [in an action to recover money] which does not either expressly or by reference determine the amount of money awarded reveals doubt, at the very least, whether the opinion … was intended by the judge to be his final act in the case."

■ No statute or rule specifies the essential elements of a final judgment. *Schaefer*, 356 U.S. at 233, 78 S.Ct. at 678. To be a final order or judgment, there must be "some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as [the court] is concerned, is the end of the case." *Fiataruolo v. United States*, 8 F.3d 930, 937 (2d Cir.1993). Here, there is ample evidence that the district court intended its decision to be final.

The court decided the principal issue in the government's favor. For that part of the case, the statement " 'defendant wins' would be a sufficient judgment." *McDermitt v. United States*, 954 F.2d 1245, 1249 (6th Cir. 1992). The court also found that the Goodwins are entitled to a modest refund because the Commissioner overestimated the amounts of special occasion gifts in 1987 and 1988. The court's order reflects its view that the calculation of this refund is merely a ministerial task. It directs the Commissioner to recompute the Goodwins' tax liability, subject to the Goodwins' approval. It then directs the government to refund the income

tax overpaid plus statutory interest, following which "the parties shall execute and file a Satisfaction of Judgment." *See* 870 F.Supp. at 268–269.

■ A judgment may be final "if only ministerial tasks in determining damages remain." *Woosley v. Avco Corp.*, 944 F.2d 313, 317 (6th Cir.1991). If the government believed that computation of the refund was more than a ministerial task, it should have brought that to the district court's attention. We thus turn to the merits of whether the special occasion gifts are taxable income to the Goodwins.

## III.

Congress has defined "gross income" broadly in the Internal Revenue Code: "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived." 26 U.S.C. § 61(a). Therefore, unless the Goodwins can prove that the special occasion gifts fall within the statutory exclusion for gifts, these payments are taxable income.

The Code provides that "[g]ross income does not include the value of property acquired by gift, bequest, devise, or inheritance." 26 U.S.C. § 102(a). In the leading case of *Commissioner v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), the Supreme Court rejected the government's proposed "test" to distinguish gifts from taxable income. Instead, the Court adhered to its previous, fact-intensive approach to this recurring issue, explaining that "the problem is one which, under the present statutory framework, does not lend itself to any more definitive statement that would produce a talisman for the solution of concrete cases." 363 U.S. at 284–85. The Court clarified, first, that "the statute does not use the term 'gift' in the common-law sense, but in a more colloquial sense"; second, that the transferor's intention is "the most critical consideration"; and third, that

---

2. According to the district court's docket sheets, judgment was entered the day after the court's order. The government did not include the judgment document in the record on appeal. Because of this omission, we cannot determine, for example, whether the district court clerk entered judgment under clause (1) or clause (2) of Fed. R.Civ.P. 58. We must therefore disregard the form of the judgment and focus on the district court's order.

"there must be an objective inquiry" into the transferor's intent. *Id.* at 285–86, 80 S.Ct. at 1196–97.

Despite its lack of doctrinal success in *Duberstein,* the government urges that we adopt the following test to govern whether transfers from church members to their minister are gifts:

> The feelings of love, admiration and respect that professedly motivated the parishoners to participate in the special occasion offerings arose from and were directly attributable to the services that taxpayer performed for them as pastor of the church. Since the transfers were tied to the performance of services by taxpayer, they were, as a matter of law, compensation.

We reject that test as far too broad. For example, it would include as taxable income every twenty dollar gift spontaneously given by a church member after an inspiring sermon, simply because the urge to give was "tied to" the minister's services. It would also include a departing church member's individual, unsolicited five hundred dollar gift to a long-tenured, highly respected priest, rabbi, or minister, a result that is totally at odds with the opinions of all nine Justices in *Bogardus v. Commissioner:*

> Has [the payment] been made with the intention that services rendered in the past shall be requited more completely, though full acquittance has been given? If so, it bears a tax. *Has it been made to show good will, esteem, or kindliness toward persons who happen to have served, but who are paid without thought to make requital for the service? If so, it is exempt.*

302 U.S. 34, 45, 58 S.Ct. 61, 66–67, 82 L.Ed. 32 (1937) (Brandeis, J., dissenting from the Court's decision that unsolicited transfers by shareholders to former employees after a company was sold were gifts) (emphasis added). We thus turn to the facts of this case, applying *Duberstein*'s objective, no-talisman approach to evaluating transferor intent.[3]

The Goodwins argue that they must prevail as a matter of law, or at a minimum that the district court erred in granting summary judgment for the government, because it is stipulated that Church members made the special occasion gifts out of love, admiration, and respect, not out of a sense of obligation or fear that Goodwin might otherwise leave. We disagree.

■ From an objective perspective, the critical fact in this case is that the special occasion gifts were made by the congregation as a whole, rather than by individual Church members. The cash payments were gathered by congregation leaders in a routinized, highly structured program. Individual Church members contributed anonymously, and the regularly-scheduled payments were made to Reverend Goodwin on behalf of the entire congregation.

Viewing the question of transferor intent from this perspective makes it clear that the payments were taxable income to the Goodwins. The congregation funds the Church, including Reverend Goodwin's salary. The special occasion gifts were substantial compared to Goodwin's annual salary. The congregation, collectively, knew that without these substantial, on-going cash payments, the Church likely could not retain the services of a popular and successful minister at the relatively low salary it was paying. In other words, the congregation knew that its special occasion gifts enabled the Church to pay a $15,000 salary for $30,000 worth of work.[4] *Accord Banks v. Commissioner,* 62 T.C.M. (CCH) 1611, 1991 WL 273741 (1991). Regular, sizable payments made by persons to whom the taxpayer provides services are customarily regarded as a form of compensa-

---

**3.** Many courts nevertheless give talismanic weight to a phrase used more casually in the *Duberstein* opinion—that a transfer to be a gift must be the product of "detached and disinterested generosity," 363 U.S. at 285, 80 S.Ct. at 1197. It is the rare donor who is completely "detached and disinterested." To decide close cases using this phrase requires careful analysis of what detached and disinterested means in different contexts. Thus, the phrase is more sound bite than talisman.

**4.** The parties stipulated that the salaries in 1990–1991 for pastors in the North Central States with church memberships of less than 400 ranged from $5,000 to $43,000, with an average of $24,176.

tion and may therefore be treated as taxable income. *See, e.g., Olk v. United States,* 536 F.2d 876, 879 (9th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 317, 50 L.Ed.2d 287 (1976) (tips to casino dealers).

We also reject the Goodwins' contention that it was error to grant summary judgment on this issue. Although a transferor's objective intent is a fact question under *Duberstein,* summary judgment may nonetheless be appropriate. *See, e.g., Armeno v. United States,* 6 Cl.Ct. 521, 524–525 (1984) (tips to casino dealers); *Gregory v. United States,* 637 F.Supp. 624, 626–628 (E.D.N.C.1986) (strike benefits to union members). The stipulated facts of this case demonstrate that the congregation as a whole made special occasion gifts on account of Reverend Goodwin's ongoing services as pastor of the Church. Therefore, no reasonable jury could conclude that these payments were excludable from the Goodwins' taxable income, and summary judgment was appropriate.[5]

The judgment of the district court is affirmed.

---

**5.** In the district court, both parties ignored the fact that Congress amended the governing statute in 1986. Section 102(c)(1) of the Code now provides that § 102(a) "shall not exclude from gross income any amount transferred by or for an employer to, or for the benefit of, an employee." Although the legislative history suggests that § 102(c)(1) was enacted to address other fact situations, its plain meaning may not be ignored in this case. That meaning seems far from plain, however. The Church members are not Rev. Goodwin's "employer," and the question whether their payments to Goodwin were made "for" his employer seems little different than the traditional gift inquiry under *Duberstein* and *Bogardus.* We therefore decline the government's belated suggestion that we affirm on the alternative ground of § 102(c)(1).