# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2094

_____

| | | |
|---|---|---|
| Terry E. Barlow, et al., | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| American National Can Company; | * | Eastern District of Missouri. |
| United Steelworkers of America, | * | |
| Local Union No. 3628, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted:  December 16, 1998

Filed:  May 5, 1999

_____

Before BEAM, FLOYD R. GIBSON, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

In September 1995,  American National Can Company ("ANC") permanently closed its Gateway plant in Pevely, Missouri, and transferred Terry E. Barlow and other employees to its plant in St. Louis.  In November 1995, many St. Louis Plant employees, including Barlow, were laid off as part of a reduction in force.  In February 1997, Barlow and others commenced this action against ANC for breach of collectively bargained agreements, and against a union, Steelworkers Local No. 3628 ("Local 3628"), for breach of its duty of fair representation.  Plaintiffs allege they were entitled

to 104 weeks of supplemental unemployment benefits after the layoffs, instead of the 53 weeks of benefits ANC paid. The district court[1] dismissed the action as time-barred, and plaintiffs appeal. Reviewing the grant of summary judgment de novo and the evidence in the light most favorable to plaintiffs, we affirm. See Schuver v. MidAmerican Energy Co., 154 F.3d 795, 799-800 (8th Cir. 1998) (standard of review).

**1. The Legal Setting.** Plaintiffs' breach-of-contract claim against ANC arises under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. To recover against an employer under § 301 for breach of a collectively bargained agreement, employees must first prove that their union breached its duty of fair representation. See Vaca v. Sipes, 386 U.S. 171, 186 (1967). This "hybrid" § 301/fair representation action is governed by the six month statute of limitations found in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). See DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 169-72 (1983).

Because the union's breach of duty is a necessary element of a § 301 claim against the employer, the employee's claims against both typically accrue, for statute of limitations purposes, when the union's breach of duty injures the employee. See Gustafson v. Cornelius Co., 724 F.2d 75, 79 & n.9 (8th Cir. 1983). For example, in the common case where a union is accused of mishandling an employee's legitimate grievance, or of refusing to take the grievance to arbitration, the six-month limitation period begins to run against the employer and the union when the grievance is rejected, or when the union decides not to pursue it. See Livingstone v. Schnuck Market, Inc., 950 F.2d 579, 583 (8th Cir. 1991); Tripp v. Angelica Corp., 921 F.2d 794, 795 (8th Cir. 1990); Butler v. Local Union 823, Int'l Bhd. of Teamsters, 514 F.2d 442, 449 (8th Cir.), cert. denied, 423 U.S. 924 (1975). Thus, the statute of limitations issue in this

---

[1]The HONORABLE GEORGE F. GUNN, JR., United States District Judge for the Eastern District of Missouri, who to our great regret passed away after issuing his decision in this case.

case requires careful analysis of the alleged breach of Local 3628's duty of fair representation to the plaintiffs.

**2. The Factual Setting.** The supplemental unemployment ("SUB") benefits in question were mandated by a Supplemental Unemployment Benefits Agreement entered into by ANC and Local 3628's parent union, the United Steelworkers of America (the "USWA"), and incorporated by reference in Article 23 of their "Master" collective bargaining agreement. Section 2 of the SUB Agreement governed the duration of SUB benefits. Under § 2.4(b), which is not a model of clarity, laid-off employees who were eligible for pension benefits were entitled to 104 weeks of SUB benefits, *except* they were limited to 53 weeks of SUB benefits if (i) there was a "permanent plant shutdown," or (ii) they were "eligible for 70/75 or Rule-of-65 retirement" and were advised by ANC that "return to active employment is unlikely." At the time in question, all the plaintiffs in this uncertified class action were thirty-year ANC employees eligible for pension benefits. Thus, § 2.4(b) seems to provide that if plaintiffs were laid off from the permanently shut down Gateway Plant, they were entitled to 53 weeks of SUB benefits; but if they were laid off from the St. Louis Plant, which was not permanently shut down, they might be eligible for up to 104 weeks of SUB benefits.

A 1978 "Accretion Agreement" between ANC, Local 3628, and the USWA governed employees, such as plaintiffs, who transferred from the St. Louis Plant to the new Gateway Plant. Section F of that Agreement provided: "in the event an employee with ten (10) or more years of accredited service is laid off from either plant, such employee shall be placed in the other plant provided the employee has the requisite seniority." When ANC closed the Gateway Plant in September 1995, it invoked Section F in transferring plaintiffs to the St. Louis Plant. Steelworkers Local 8795, representing Gateway Plant employees, filed a grievance, arguing that "the Master Agreement takes precedence over the Accretion Agreement" and therefore Gateway

employees "should not have been transferred" and were entitled to Master Agreement plant closing benefits.

The St. Louis Plant layoffs occurred in November 1995, while this grievance was pending. At a December 1995 meeting, ANC and the union provided affected employees written estimates of the SUB benefits they would receive. The estimate provided plaintiff Barlow stated in part:

PENSION

You are eligible for a Rule of 70/75 Pension effective December 1, 1996. . . . You must apply for this pension benefit. Benefits will not automatically start. Please apply approximately 90 days prior to the date benefits are to begin.

\* \* \* \* \*

SUPPLEMENTAL UNEMPLOYMENT BENEFIT

You are eligible for 53 weeks of Guaranteed SUB.

Neither Barlow nor any other plaintiff asked Local 3628 to file a grievance challenging ANC's tentative December 1995 SUB benefits determinations. ANC and Local 3628 argue that plaintiffs' claims are time-barred because the six-month statute of limitations commenced running with these determinations, as the National Labor Relations Board concluded in dismissing plaintiffs' subsequent unfair labor practice charges. But there had been *no conceivable* breach of the duty of fair representation by Local 3628 at this point in the process. Thus, if plaintiffs' claims were barred at this time, it was because they failed to exhaust contract remedies -- an issue not addressed by the district court -- not because the claims were time-barred.

Moving on in this sequence of events, in January 1996, Local 3628 filed a grievance reciting that ANC was treating all Gateway employees "as plant closing employees," and protesting that "no employee from Gateway should have been transferred to St. Louis [in a manner that] displaced anyone from the St. Louis plant." As a remedy, Local 3628 urged that Gateway Plant employees be permitted to exercise an option to receive Master Agreement plant closing benefits. On February 12, 1996, ANC and the USWA entered into a written settlement of "all issues regarding application of the 'Accretion Agreement' . . . to the Gateway plant closing and the St. Louis restructuring." Though it did not explicitly resolve SUB benefits duration issues, that agreement addressed pension and SUB benefit eligibility for Gateway Plant employees who had transferred to the St. Louis Plant and been laid off:

> 1. Those employees of the Gateway facility who are currently on layoff, affected by the shutdown of that facility, whether having worked at St. Louis or not, subsequent to the closing of the Gateway plant on September 3, 1995, have the option pursuant to the . . . Pension Agreement between [ANC] and the [USWA] to retire from [ANC], pursuant to the eligibility requirements contained in that document, or, alternatively if they so desire, remain in their current layoff status, collecting benefits for which they may otherwise be eligible, for instance, SUB, and exercise their pension options to which [they are] eligible in accordance with the provisions of the Agreement.

On February 16, 1996, Local 3628 held a meeting at which representatives from the USWA explained to union members "their decision on the accretion agreement, and how it ha[d] been applied to the St. Louis plant." At least one plaintiff was recorded as having attended this meeting.

**3. The Statute of Limitations for Plaintiffs Other Than Terry Barlow.**
Plaintiffs' complaint alleges that Local 3628 "decided to show favoritism" to St. Louis Plant employees who had *not* been transferred from the Gateway Plant by "secur[ing]

for these workers . . . the full 104 weeks of supplemental employment benefits." On appeal, plaintiffs expand on this theory by contending that Local 3628's bias against plaintiffs was revealed in its January 1996 grievance, which protested the transfer of laid-off Gateway employees to the St. Louis Plant, and in the February 1996 grievance settlement with ANC "pursuant to which Plaintiffs are apparently considered victims of a plant closing and not a layoff." This is a claim for class-wide relief, premised on the notion that Local 3628 "sold out" the interests of Gateway Plant employees who were transferred to the St. Louis Plant under the Accretion Agreement.[2]

As the district court recognized, the difficulty with this claim is that it accrued when Local 3628 (represented by the USWA) entered into the grievance settlement agreement in February 1996. "[A]n employee's cause of action accrues when the grievance procedure is exhausted or otherwise breaks down to the employee's disadvantage." Cook v. Columbian Chem. Co., 997 F.2d 1239, 1241 (8th Cir. 1993) (internal quotation omitted). The settlement agreement purported to resolve "all issues regarding application of the 'Accretion Agreement' . . . to the Gateway plant closing and the St. Louis restructuring." Plaintiffs argue they did not know the significance of the agreement because it settled a grievance not filed on their behalf and failed to disclose they would receive only 53 weeks of SUB benefits. But plaintiffs were members (or former members) of Local 8795 and Local 3628. They were charged with knowledge that their local unions had filed grievances to clarify their rights in a complex situation, and it is undisputed the local unions made an effort to explain the

---

[2]It is interesting and perhaps ironic that the Gateway employees' union, Local 8795, filed a grievance objecting to their transfer to the St. Louis Plant. But it was filed before the St. Louis Plant layoffs presented transferred Gateway employees a chance to be paid more weeks of SUB benefits by reason of the transfers. The record does not reveal whether Local 8795 adhered to its initial position after the St. Louis Plant layoffs. This dilemma may be one reason the USWA as parent union stepped in to negotiate a settlement with ANC. We note that plaintiffs have accused only Local 3628 of breaching the duty of fair representation.

settlement to their members. If plaintiffs believed that Local 3628 had negotiated a settlement contrary to the interests of plaintiffs as a class, it was incumbent upon them to challenge the settlement with a § 301/fair representation lawsuit filed within six months of that agreement. If plaintiffs instead concluded that the prior grievances had been settled in a manner that left uncertain the rights of Gateway Plant employees as a class to SUB benefits, it was incumbent upon plaintiffs to initiate a new collective grievance to clarify those rights. So far as the record on appeal reveals, with the exception of Terry Barlow no plaintiff requested Local 3628 to initiate such a grievance. Therefore, the claims of all plaintiffs other than Barlow are time-barred because they were not filed within six months of the February 1996 settlement agreement.[3]

**4. Plaintiff Terry Barlow.** Plaintiff Barlow's individual situation presents a more complex statute of limitations issue. When Barlow was told in December 1995 he would be paid 53 weeks of SUB benefits, he complained. ANC and Local 8795 representatives told him to contact ANC in Chicago. Barlow alleges that he did so and got no response until May 1996 (long after the February grievance settlement), when Al Ekl of ANC orally informed Barlow he was entitled to 104 weeks of SUB benefits. Then in July, Barlow "heard from some other guys" that ANC would limit his SUB benefits to 53 weeks "because we were considered to have been the victims of a plant closing." Barlow contacted Ekl again and was referred to an ANC labor relations specialist. He was finally advised in a September 4, 1996, ANC letter that he would only be paid 53 weeks of SUB benefits. Barlow promptly wrote the USWA,

---

[3]Plaintiffs suggest in their briefs, without presenting the issue, that the doctrines of equitable estoppel and equitable tolling should apply to extend the six-month statute of limitations. We disagree. There is no evidence of "positive misconduct" by Local 3628 or ANC that was deliberately designed to lead plaintiffs not to challenge, within the statute of limitations period, either the settlement agreement, or the position taken by Local 3628 regarding the transfer of Gateway Plant employees. Skyberg v. United Food & Commercial Workers Int'l Union, 5 F.3d 297, 302 (8th Cir. 1993).

demanding that it file a grievance in his behalf for an additional 51 weeks of SUB benefits. Counsel for the USWA formally responded on January 16, 1997, informing Barlow he had received all the SUB benefits to which he was entitled and the Union would therefore do nothing further in his behalf. Barlow argues that the six-month statute of limitations did not begin to run until this January 16, 1997, union response, in which case his lawsuit was timely filed on February 28, 1997.

As we have explained, the February 1996 grievance settlement purported to resolve class-wide issues regarding the transfer of Gateway employees to St. Louis and the subsequent layoffs. However, that agreement did not address more specific questions regarding the duration of SUB benefits to particular employees. For example, ANC's September 4 letter to Barlow explained:

> According to your age, service, and the permanent plant shutdown of the Gateway facility, you are eligible for a Rule 70/75 retirement effective December 1, 1996. Therefore you are not eligible for any SUB benefits on or after December 1, 1996. This is in accordance with the [February 1996] agreement between the [USWA] and [ANC] regarding the application of the "Accretion Agreement" to the Gateway plant closing and the St. Louis restructuring.

This determination may have been "in accordance with" the February settlement, but that would not be apparent to an individual employee from the face of the settlement agreement. From December 1995 to January 1997, Barlow bombarded ANC and the unions with complaints urging that they clarify his right to 104 weeks of SUB benefits. Those complaints met with buck-passing, delays, and inconsistent responses from ANC and union representatives before ANC finally issued its negative September 1996 determination of his individual claim. Viewing the case from this narrow focus, the union's alleged breach of duty occurred when the USWA refused to file a grievance challenging that determination. And because an aggrieved employee must exhaust or

attempt to exhaust non-futile contract remedies before filing a § 301/fair representation lawsuit, that breach of duty should be deemed to occur, for statute of limitations purposes, when the USWA responded to Barlow's request that it file a grievance, at least at the summary judgment stage when we must view the record in the light most favorable to Barlow. All this supports his contention that the statute of limitations was tolled or did not commence running as to his individual claim until the USWA's January 1997 response.

There is nonetheless a fatal flaw in this theory of Barlow's individual claim -- it was not pleaded. Barlow alleged that Local 3628 breached its duty of fair representation by discriminatorily seeking more SUB benefits for St. Louis Plant employees who had not been transferred in from the Gateway Plant. But ANC denied Barlow's individual claim based upon its interpretation of the interplay between the Accretion Agreement, the SUB Agreement, and the Pension Agreement. Barlow addressed his complaint against that determination to the USWA, not Local 3628, and counsel for the parent union sent him a lengthy response agreeing with ANC's interpretation of those agreements and explaining why that interpretation resulted in his SUB benefits terminating on December 1, 1996, while the SUB benefits of those continuously employed at the St. Louis Plant continued for another year. There is nothing in the record linking that response to plaintiffs' allegations of a breach of duty by Local 3628. Thus, while Barlow might have had an individual § 301/fair representation claim that was not time-barred in February 1997, such a claim was not made a part of this lawsuit. Accordingly, the district court properly granted Local 3628's motion for summary judgment.

Finally, plaintiffs argue that their claims against ANC remain viable because "[t]he District Court did not enter any judgment on the claims against the company." We disagree. The district court entered judgment on February 4, 1998 "in favor of defendants and against plaintiffs." The court subsequently refused to accept for filing

ANC's motion for summary judgment. In these circumstances, it is clear the court "intended its decision to be final" as to both defendants. Goodwin v. United States, 67 F.3d 149, 151 (8th Cir. 1995).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.