# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 17-1019

———————————————

John Henry Williams

*Plaintiff - Appellee*

v.

Debra York, Infirmary Administrator, Varner; Ludlam, Dental Assistant, Varner

*Defendants*

Randy Watson, Warden, Varner; Moses Jackson, Assistant Warden, Varner; Bolden, Major, Chief of Security, Varner; Malone, Major, Chief of Security, Varner Super Max

*Defendants - Appellants*

Stephens, Captain, Shift Commander, Varner Super Max; Corizon CMS, Medical Providers for ADC

*Defendants*

——————

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

——————

Submitted: December 13, 2017
Filed: May 31, 2018

——————

Before SMITH, Chief Judge, ARNOLD and KELLY, Circuit Judges.

——————

KELLY, Circuit Judge.

In this 42 U.S.C. § 1983 action, inmate John Henry Williams alleges that Arkansas Department of Correction (ADC) officials Randy Watson, Moses Jackson, Lasaundra Malone, and Kennie Bolden (Defendants) were deliberately indifferent to his painful dental condition. After this court decided Cullor v. Baldwin, 830 F.3d 830 (8th Cir. 2016), Defendants asked the district court[1] to reconsider its previous denial of their motion for summary judgment based on qualified immunity. The district court denied the request, and Defendants appeal. We affirm.

I.

Construed in the light most favorable to Williams, the record includes the following facts.[2] See Letterman v. Does, 789 F.3d 856, 858–59 (8th Cir. 2015). Watson is the warden at ADC's Varner Super Max Unit (Varner), and Jackson is the assistant warden. Malone and Bolden are security chiefs at Varner. From June 11, 2013, until at least September 26, 2013, Williams was housed in administrative segregation at Varner. On June 27, 2013, he submitted a sick call, complaining of tooth pain. Four days later, a nurse examined Williams, and recommended that he be treated by a dentist. But Varner did not have an onsite dentist at the time. Instead, Dr. Russell, the dentist at ADC's Cummins Unit, was treating inmates at Varner one to

---

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas, adopting the report and recommendation of the Honorable Joseph J. Volpe, United States Magistrate Judge for the Eastern District of Arkansas.

[2]Williams's verified complaint must be treated as the equivalent of an affidavit for summary judgment purposes, see Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 682 (8th Cir. 2012), and the facts set forth in his affidavits must be accepted as true. See Wise v. Lapin, 674 F.3d 939, 941–42 (8th Cir. 2012) (per curiam).

two days per week, and Varner inmates were being transported to Cummins for extractions two to three times per month. Varner and Cummins are two miles apart.

Williams was not seen by a dentist until three months after he submitted his sick call. According to Williams, in that time, his teeth and gums became diseased, abscessed, and severely painful. His "mouth was filled with boil type sores," "puss [was] seeping from his gums," and his face became disfigured. He had toothaches, was unable to eat regular foods, lost weight, and "was scared he would die daily." During the delay, he was seen occasionally by a nurse, who gave him ibuprofen and told him he was on a waiting list to see a dentist. On September 6, 2013, Williams extracted two of his own teeth. He was scheduled to see Dr. Russell on September 11, 2013, but that appointment was cancelled due to unknown "security issues." When Dr. Russell finally saw Williams on September 26, 2013, he immediately extracted seven more teeth.

Williams avers that each Defendant knew of his dental pain. He sent affidavits to Warden Watson and Assistant Warden Jackson, stating he was not receiving care for his "extreme dental issues." In the affidavit he sent to Watson, Williams indicated he was in "a great deal of pain and discomfort," and asked Watson to arrange for him to be treated at another ADC unit. During an in-person meeting, Williams also asked Jackson to help him get dental care. In response, Jackson laughed and told Williams he had no authority to pressure medical staff to send him to Cummins for treatment. During yard call, Williams showed his mouth and teeth to Major Malone, and sometimes "swallow[ed] his pride to beg [her] for help." He got no response. Major Bolden was aware of Williams's deteriorating dental condition too, but also took no action. During daily security checks, Williams "would beg and beg [Defendants] for help in getting [him] a dentist, or just to take actions which would enable [him] to be escorted and/or transferred over to the Cummins Unit . . . where a dentist could render emergency extractions/dental services." The officials "turned their backs on [him], leaving him helpless in a one-man cell." In July 2014, Williams filed this lawsuit,

alleging that Defendants had been deliberately indifferent to his serious dental needs, and claiming that each of them had been personally aware of his dental problems yet did nothing to help him.

In June 2015, Defendants moved for summary judgment, arguing, as relevant, that Williams had failed to state a viable § 1983 claim against them because they are not physicians, have no formal medical training, and are "not involved in the day-to-day delivery of medical services, other than to provide security." According to Defendants, only those individuals directly responsible for an inmate's dental care can be liable in a deliberate-indifference claim. In Defendants' view, they cannot be held liable for the delay in Williams's treatment because Corizon—a private medical and dental care provider—was responsible for his dental care pursuant to a contract with ADC. In August 2015, the district court, adopting the magistrate judge's report and recommendation, denied Defendants' request for qualified immunity. Specifically, the district court reasoned that, in the light most favorable to Williams, the record could show that his dental problem was both serious and known to Defendants. The district court acknowledged that none of the Defendants had medical expertise, but determined that even a layperson could have understood that Williams's dental condition was serious. The district court further reasoned that Defendants could not "hide behind the fact there was no dentist available [at Varner]. As custodians they ha[d] the obligation to ensure treatment was procured."[3]

This court decided <u>Cullor</u> in August 2016. In <u>Cullor</u>, we held that two prison officials were entitled to qualified immunity in an inmate's deliberate-indifference claim arising out of a shortage of prison dentists. 830 F.3d at 839. The plaintiff alleged that prison officials had failed to "provide sufficient resources to ensure minimally adequate dental care" and failed to address a resulting dental staff shortage,

---

[3]The district court dismissed claims Williams brought against another ADC official based on his failure to exhaust administrative remedies. Williams also reached a settlement with Corizon and one of its employees.

causing the plaintiff to suffer unnecessary pain while he waited for dentures.  Id. at 836.  The officials were generally aware that the dentist shortage was causing long wait times.  See id. at 835–36.  Notably, the plaintiff conceded that the officials "made efforts to secure additional dental staff."  Id. at 835 & n.9.  The officials had actively recruited dentists, explored various recruiting programs, and offered the maximum allowable salary to qualified applicants.  Id. at 835.  In light of these efforts, we concluded that the officials could not be said to have been deliberately indifferent to the shortage of dentists.  Id. at 839.  Instead, "governmental and economic factors" had played the "greatest role" in causing the shortage, and the officials had tried to alleviate the shortage despite those factors.  Id.

Three months after this court decided Cullor, Defendants filed their motion for reconsideration, requesting that the district court "reconsider its previous ruling on qualified immunity in light of [Cullor]."  In the motion, Defendants argued that Cullor was "factually and legally on point," and that they could not have violated Williams's clearly-established rights in 2013 because Cullor was not decided until 2016.

The magistrate judge recommended that the motion be denied, reasoning that Cullor was distinguishable because, here, Defendants had not offered a "meritorious reason to justify the delay in Mr. Williams's dental care" and had "offered no evidence to show the delay in Mr. Williams's treatment was not a product of their conduct."  The magistrate judge indicated that Defendants had "rested on the fact they are not medically trained personnel involved in the 'day-to-day delivery of medical services.'"

Defendants filed timely written objections and a supplemental declaration.  In the declaration, Watson attested that, during the relevant period, Corizon was responsible for providing dental care to inmates pursuant to a contract with ADC, and he received monthly updates about inmate dental care.  During the delay, Watson was aware that Varner lacked an onsite dentist, but he knew that Dr. Russell was treating

inmates at Varner one or two days per week and that inmates were being transported to Cummins for treatment two or three times per month. Watson also averred that Corizon had been trying to hire an onsite dentist for Varner, and that none of the Defendants were authorized to hire a dentist or to direct Corizon personnel to provide dental services to Varner inmates. The district court denied Defendants' motion for reconsideration. Defendants now appeal.

## II.

As an initial matter, this case presents a jurisdictional issue. See Williams v. Cty. of Dakota, Neb., 687 F.3d 1064, 1067 (8th Cir. 2012). "Ordinarily, we lack jurisdiction to review the denial of a motion for summary judgment, because it does not constitute a final order. However, under the collateral order doctrine, we may conduct a limited interlocutory review of a district court's order denying summary judgment on the basis of qualified immunity." Edwards v. Byrd, 750 F.3d 728, 731 (8th Cir. 2014) (internal citations omitted); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985).

We also have jurisdiction to review district court orders denying motions to reconsider previous denials of qualified immunity. Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999).[4] This court construes motions for reconsideration of non-final orders as motions under Rule 60(b) of the Federal Rules of Civil Procedure. Id.; see also Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006) ("[M]otions for reconsideration are nothing more than Rule 60(b) motions when directed at non-final

---

[4]In contrast, we do not have jurisdiction where a party has "repeatedly file[d] the same motion with a district court" and has "merely reasserted arguments raised unsuccessfully in previous motions." Taylor v. Carter, 960 F.2d 763, 764 (8th Cir. 1992). Here, Defendants' motion for reconsideration differs both substantively and procedurally from the original motion for summary judgment: it seeks reconsideration of the order denying that motion based on this court's intervening decision in Cullor.

orders." (quotation omitted)).  An appeal from the denial of a Rule 60(b) motion does not bring the underlying order or judgment up for appellate review.  Broadway, 193 F.3d at 989; Fox v. Brewer, 620 F.2d 177, 179–80 (8th Cir. 1980).  Thus, Defendants' appeal from the order denying reconsideration was ineffective to bring up on appeal the original order denying summary judgment.  Defendants designated the original order in their notice of appeal, but their notice was not timely as to that order.  See 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A), 4(a)(4).

Defendants contend that we have jurisdiction over the original order because their motion for reconsideration was based on Cullor.  As Defendants see it, the district court effectively renewed its ruling on the issue of qualified immunity when it denied reconsideration because Cullor was decided after its original order.  But the timing of the Cullor decision does not affect the scope of our jurisdiction in this case. "Only Congress may determine [our] subject-matter jurisdiction," Hamer v. Neighborhood Hous. Servs. of Chi., 138 S. Ct. 13, 17 (2017) (quotation omitted), and we have "no authority to create equitable exceptions to [its] jurisdictional requirements."  Bowles v. Russell, 551 U.S. 205, 214 (2007).  Congress has set the time within which parties must file notices of appeal in civil cases at thirty days.  28 U.S.C. § 2107(a).  And, the Supreme Court has made "clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement."  Bowles, 551 U.S. at 214; see also Dieser v. Cont'l Cas. Co., 440 F.3d 920, 923 (8th Cir. 2006). Defendants did not timely appeal the district court's denial of summary judgment. Therefore, we only have jurisdiction to review the district court's order denying reconsideration under Rule 60(b).

## III.

Rule 60(b) "provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances."  Jones v. Swanson, 512 F.3d 1045, 1048 (8th Cir. 2008) (quotation omitted); Noah v. Bond Cold Storage, 408 F.3d

1043, 1045 (8th Cir. 2005) (per curiam). "We will reverse a district court's ruling on a Rule 60(b) motion only if there was a clear abuse of the court's broad discretion." Bennett v. Dr Pepper/Seven Up, Inc., 295 F.3d 805, 807 (8th Cir. 2002). Relevant here, "[a]n error of law is necessarily an abuse of discretion." City of Duluth v. Fond du Lac Band of Lake Superior Chippewa, 702 F.3d 1147, 1152 (8th Cir. 2013).

The district court did not abuse its discretion by denying Defendants' motion for reconsideration. To begin, the district court did not err in distinguishing Cullor. The plaintiff in Cullor claimed that prison officials had been deliberately indifferent to his serious dental needs by failing to adequately staff the prison's dental unit despite their general knowledge of resulting delays in inmate dental care. By contrast, Williams does not allege that Defendants were deliberately indifferent because they failed to adequately staff Varner's dental unit. Instead, his claims are premised on allegations that each Defendant was *personally* aware of his severely painful dental condition but took no action to get him to Dr. Russell, who was treating Varner inmates, or to any other dentist. Unlike in Cullor, where a shortage of dentists formed the basis of the plaintiff's claims, here, Defendants seek to use the shortage of dentists at Varner as a defense to Williams's claims. See Thompson v. King, 730 F.3d 742, 750 (8th Cir. 2013) ("[I]t is unconstitutional for prison officials to act deliberately indifferent to an inmate's serious medical needs." (citing Estelle v. Gamble, 429 U.S. 97, 104–05 (1976))); Langford v. Norris, 614 F.3d 445, 460 (8th Cir. 2010) ("Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." (quotation omitted)).

As the magistrate judge aptly observed, unlike the Cullor defendants who tried to hire dentists once they learned of the shortage, Defendants have not shown—nor do they claim—that they tried to get Williams treatment after they were alerted to his condition. Cf. Farmer v. Brennan, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not

averted."). Defendants are constitutionally obligated to see that the inmates in their custody who need dental care receive it. See Langford, 614 F.3d at 460. And if Defendants were deliberately indifferent to Williams's serious dental condition, they may be held personally liable, notwithstanding ADC's contract with Corizon. See id. ("[W]here the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment." (quoting Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989))); cf. West v. Atkins, 487 U.S. 42, 56 & n.14 (1988) ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.").

In Cullor, this court did not create a new constitutional right. An inmate's right to treatment for serious and painful dental conditions has been clearly-established for more than three decades. See Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) ("A three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983."); Fields v. Gander, 734 F.2d 1313, 1315 (8th Cir. 1984) (failure to provide dental care for three weeks despite knowledge of inmate's severe tooth pain could support a deliberate-indifference claim); see also Moore v. Jackson, 123 F.3d 1082, 1086–87 (8th Cir. 1997) (per curiam); Patterson v. Pearson, 19 F.3d 439, 440 (8th Cir. 1994) (per curiam). Thus, the district court's denial of Defendants' motion for reconsideration was not an abuse of discretion.[5]

---

[5]Defendants also argue that Williams lacks standing because Corizon was responsible for his dental care. This argument conflates the injury and traceability requirements of standing with Williams's ultimate burden of proof. See Balogh v. Lombardi, 816 F.3d 536, 541–44 (8th Cir. 2016) (discussing standing); Langford, 614 F.3d at 460 (prison officials have a constitutional duty to ensure that inmates who need medical care receive it); Crooks, 872 F.2d at 804 (prison officials may not avoid liability merely by delegating responsibility for inmate care to an outside provider).

## IV.

Accordingly, we affirm.

_____