# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1815
_____

Thomas Kohlbeck; Gay Hartfiel; Roger Leake; Rita Leake

*Plaintiffs - Appellants*

v.

Wyndham Vacation Resorts, Inc.; Wyndham Vacation Ownership, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: February 17, 2021
Filed: August 3, 2021
_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.
_____

SMITH, Chief Judge.

Thomas Kohlbeck and Gay Hartfiel, a married couple, and Rita and Roger Leake, another married couple, entered into multiple timeshare contracts with Wyndham Vacation Resorts, Inc. ("Wyndham"). The couples sued Wyndham, alleging various improper trade practices under Missouri law. Wyndham asserted counterclaims against the couples for breach of contract. The couples' claims were

dismissed, and Wyndham's counterclaims continued. Wyndham moved for summary judgment on its counterclaims. In defense, the couples asserted duress and fraudulent misrepresentation. The district court[1] granted summary judgment in Wyndham's favor. The couples appeal. We affirm the district court's grant of summary judgment.

## I. *Background*

Kohlbeck, Hartfiel, and the Leakes have had a long history with Wyndham. Kohlbeck and Hartfiel first contracted with Wyndham in 2007. The Leakes first contracted with Wyndham in 2001. As relevant, the contracts allowed the couples to stay at the properties they had ownership in, rent out the properties they had ownership in, and rent properties from other people who had Wyndham-related timeshares. Whenever the couples traveled through Wyndham, Wyndham representatives would insist that the couples attend short owner update meetings. But according to the couples, the meetings were actually grueling, hours-long sales presentations. Despite their frustrations, over the years, both couples entered into multiple new contracts with Wyndham. Each new contract would replace the previous contract, so that each couple had only one active contract with Wyndham at a time. Kohlbeck and Hartfiel's active contract at the time of the suit began in July 2017. The Leakes' active contract was formed in May 2015.

Both couples stopped making payments under their active contracts and, in August 2018, sued Wyndham in state court. They alleged that Wyndham engaged in various unfair trade practices under the Missouri Merchandising Practices Act. Wyndham removed the case to federal court. The couples' claims against Wyndham were eventually dismissed for failure to meet federal pleading standards. Wyndham responded to the couples' suit by asserting breach-of-contract claims against them.

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

Wyndham moved for summary judgment on its breach-of-contract claims. The couples asserted the defenses of duress and fraudulent misrepresentation.

In their depositions, both couples identified several instances that they argue constituted duress or fraudulent misrepresentation. First, both couples claimed that Wyndham falsely represented the length of the update meetings. Second, both couples asserted that Wyndham falsely represented that they would be able to offset certain monthly fees under the contracts by renting their properties to third parties. The Leakes additionally stated that Wyndham falsely informed them (1) about the quality of their accommodations, (2) that the monthly fees under the contracts would increase only minimally, and (3) that they could travel anywhere at any time.

On undisputed facts, the district court determined as a matter of law that Kohlbeck, Hartfiel, and the Leakes breached their contracts with Wyndham and that the couples failed to establish the defenses of duress and fraudulent misrepresentation. Wyndham moved for monetary damages. The couples' response to that motion included a motion under Federal Rule of Civil Procedure 60(b).[2] In its order, the district court granted Wyndham's motion for monetary damages and denied

_____

[2]The couples styled their motion a "motion for reconsideration" but did not specify whether it was a motion under Federal Rule of Civil Procedure 59(e) or 60(b). *Cf. Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999) ("This Court is frequently put in the difficult position of deciding whether a 'motion for reconsideration' is in fact a Rule 59(e) 'Motion to Alter or Amend a Judgment,' or a Rule 60(b) 'Motion for Relief from Judgment or Order.'"). The couples filed their motion more than 28 days after the district court granted summary judgment in Wyndham's favor. The motion was also directed at a non-final order, as explained below. Thus, it was not a motion under Rule 59(e), which has a 28-day time limit and is reserved for final judgments. *See id.*; Fed. R. Civ. P. 59(e). We therefore construe the motion as one under Rule 60(b). *See Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018) ("This court construes motions for reconsideration of non-final orders as motions under Rule 60(b) . . . .").

the couples' Rule 60(b) motion. The couples' notice of appeal indicated they were appealing from the "order granting monetary damages entered in this action on the 1st day of April, 2020." Notice of Appeal at 1, *Kohlbeck v. Wyndham Vacation Resorts*, No. 6:18-cv-03319-MDH (W.D. Mo. 2020), ECF No. 96.

## II. *Discussion*

Kohlbeck, Hartfiel, and the Leakes argue that the district court erred when granting Wyndham summary judgment by finding that the couples failed to establish the defenses of duress and fraudulent misrepresentation.

## A. *Appellate Jurisdiction*

Before addressing the merits, we must first determine whether the couples' notice of appeal confers appellate jurisdiction on us over the district court's grant of summary judgment. Federal Rule of Appellate Procedure 3(c) sets certain requirements for a notice of appeal. We have explained that Rule 3 "is a jurisdictional requirement." *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019). The Supreme Court has too. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317–18 (1988); *see also Gonzalez v. Thaler*, 565 U.S. 134, 147 (2012) ("We have held that 'Rule 3's dictates are jurisdictional in nature.'" (quoting *Smith v. Barry*, 502 U.S. 244, 248 (1992)).

Nevertheless, in response to Wyndham's jurisdiction arguments, the couples ask us to view Rule 3 as a nonjurisdictional claim-processing rule. It is true that the Supreme Court has increasingly "stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019). But even if the Supreme Court's more recent decisions "call[] the precedents treating the requirements of Rule 3(c) as jurisdictional into doubt," "we are bound to follow *Torres* and later precedents on this issue until the Supreme Court overrules them." *Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins. Co.*, 953 F.3d 707, 723 (11th Cir. 2020).

-4-

Thus, we apply the test we always have: "When determining whether an appeal from a particular district court action is properly taken, we construe the notice of appeal liberally and permit review where the intent of the appeal is obvious and the adverse party incurs no prejudice." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 765–66 (8th Cir. 2020) (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 286 F.3d 1051, 1058 (8th Cir. 2002)). In other words, the notice of appeal must be "the functional equivalent of what the rule requires." *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 458 (8th Cir. 2016) (quoting *Smith v. Barry*, 502 U.S. 244, 248 (1992)).

Rule 3(c) requires a notice of appeal to "(A) specify the party or parties taking the appeal by naming each one in the caption or body of the notice . . . ; (B) designate the judgment, order, or part thereof being appealed; and (C) name the court to which the appeal is taken."

### 1. *Failure to Name this Court*

First, the couples' notice of appeal inexplicably appealed to and from two nonexistent courts. Notice of Appeal at 1 (appealing from the "United States District Court for the Southern District of Missouri" and "to the United States Court of Appeals for the Southern District of Missouri"). We note the similarities between this notice of appeal and the notices of appeal in *Newcomb v. Wyndham Vacation Ownership, Inc.*, 999 F.3d 1134 (8th Cir. 2021). In *Newcomb*, we dismissed for lack of appellate jurisdiction, finding the notices of appeal "entirely deficient" under Rule 3(c) because the appellants "appeal[ed] an order entered on a day when no order issued, from a district court that does not exist, [and] to a court of appeals that does not exist." *Id.* at 1137.

Here, the couples appealed from a real and specific order. Their notice of appeal also properly named the parties in the caption. The only Rule 3(c) requirement missing was the naming of this court. Although the notice of appeal failed to properly

name the United States Court of Appeals for the Eighth Circuit, the couples' intent to appeal to this court was obvious, and Wyndham was not prejudiced. *See Vogt*, 963 F.3d at 765–66. This is because (1) the couples filed the notice of appeal with the proper district court, (2) there was only one appellate court they could be appealing to, (3) the notice of appeal was transferred to the only relevant appellate court, and (4) the improper naming of courts did not delay the case or otherwise prejudice Wyndham.

This conclusion aligns with our sister circuits that have addressed the issue. *See Jackson v. Lightsey*, 775 F.3d 170, 175–76 (4th Cir. 2014) (holding that a failure to properly name the court being appealed to did not deny the court appellate jurisdiction because "there [wa]s only one possible appellate forum"); *Isert v. Ford Motor Co.*, 461 F.3d 756, 760 (6th Cir. 2006) (explaining that "[w]hen there is only one possible appellate forum, . . . and no information or action contrary to the proper forum appears on the face of the papers, the filing of a notice of appeal has the practical effect of 'naming' that forum" (quoting *Dillon v. United States*, 184 F.3d 556, 558 (6th Cir. 1999) (en banc))); *United States v. Treto-Haro*, 287 F.3d 1000, 1002 n.1 (10th Cir. 2002) (stating that "[t]he Government's failure to identify this [c]ourt in its notice of appeal" was "careless" but "did not prejudice or mislead [the] [d]efendant" because "the Tenth Circuit [wa]s the only [c]ourt to which the Government [could] take th[e] appeal").

### 2. *Designation of the Appealed-from Order*

The couples' notice of appeal stated that they were appealing from the "order granting monetary damages entered in this action on the 1st day of April, 2020." Notice of Appeal at 1. The April 1 order considered Wyndham's motion for monetary damages and the couples' Rule 60(b) motion for reconsideration of the summary-judgment order. The district court's ruling was also the last order that the district court entered.

Wyndham points us to several cases that explain that appealing from the denial of a Rule 60(b) motion does not confer jurisdiction over the underlying merits decision. *See, e.g.*, *Giles v. Saint Luke's Northland-Smithville*, 908 F.3d 365, 368 (8th Cir. 2018) (per curiam) ("An appeal from the denial of a Rule 60(b) motion does not raise the underlying judgment for our review . . . ." (quoting *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005) (per curiam))). This is an accurate statement of the law. But the couples did not appeal from the denial of their Rule 60(b) motion, though the district court addressed that issue in the April 1 order. They instead appealed from the district court's monetary-damages determination in the April 1 order.

The April 1 order was the district court's final, appealable order on Wyndham's breach-of-contract claim. We have explained that, "[i]n an action for money, specification of the amount of monetary award generally is an essential element of the judgment." *Minn., Dep't of Revenue v. United States*, 184 F.3d 725, 726 n.1 (8th Cir. 1999) (citing *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 233–35 (1958)). Thus, when awarding monetary damages is more than a "ministerial task[]," the final appealable order is the one that awards damages. *Id.* (quoting *Goodwin v. United States*, 67 F.3d 149, 151 (8th Cir. 1995)).

In this case, the district court's order granting summary judgment did not leave only ministerial tasks to determine damages or provide a "clear and unequivocal manifestation . . . of its belief that the decision . . . [was] the end of the case," leaving only execution of the judgment. *Tweedle v. State Farm Fire & Cas. Co.*, 527 F.3d 664, 668 (8th Cir. 2008) (quoting *Goodwin*, 67 F.3d at 151). In the summary-judgment order, the district court specified that it would determine Wyndham's damages in the future: "Wyndham is ordered to file a motion for a specific damage amount *to be determined* and entered against [the couples]." Order Granting Wyndham's Mot. for Summ. J. at 15, *King v. Wyndham Vacation Resorts*, No. 6:18-cv-03319-MDH (W.D. Mo. 2020), ECF No. 88 (emphasis added) (all caps and bold

omitted). Therefore, the district court's final order was its April 1 order granting Wyndham's request for monetary damages, where it evaluated the record against the parties' motions to determine the amount of Wyndham's award. Order Granting Mot. for Monetary Damages at 2, *King v. Wyndham Vacation Resorts*, No. 6:18-cv-03319-MDH (W.D. Mo. 2020), ECF No. 94 ("Therefore, after a review of the record before the [district c]ourt, the [c]ourt grants [Wyndham's] motion for monetary damages." (all caps and bold omitted)).

We have further explained that, "[o]rdinarily, a notice of appeal that specifies the final judgment in a case should be understood to bring up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment." *Beadle v. City of Omaha*, 983 F.3d 1073, 1076 (8th Cir. 2020) (quoting *Greer v. St. Louis Reg'l Med. Ctr.*, 258 F.3d 843, 846 (8th Cir. 2001)). We, and other circuits, believe that the same rule apples to notices that specify a final order. *See Auto Alignment*, 953 F.3d at 722–25; *Caudill v. Hollan*, 431 F.3d 900, 906 (6th Cir. 2005). The question before us, then, is whether the district court's final order was predicated on the summary-judgment order. It was. In fact, the April 1 monetary award was "essential" to finality, *Minn., Dep't of Revenue*, 184 F.3d at 726 n.1, could not have happened without the earlier summary-judgment order, and was awarding damages resulting directly from the favorable summary-judgment order.

Further, the couples' intent to appeal was obvious, and Wyndham was not prejudiced. *See Vogt*, 963 F.3d at 765–66. The April 1 order addressed Wyndham's monetary damages, which resulted from the grant of summary judgment. And the couples directly challenged the summary-judgment order through their Rule 60(b) motion, which was ruled on in the same order as the monetary damages.[3] Nor has

---

[3]We reiterate that parties cannot "raise the underlying judgment for our review" by appealing from an order addressing a Rule 60(b) motion. *Noah*, 408 F.3d at 1045. We mention the motion here only as evidence of the couples' intent to appeal the summary-judgment order from their naming of the final order.

Wyndham offered anything to show that it was prejudiced by the couples' notice of appeal, which properly named the appealed-from order. During oral arguments, Wyndham's counsel stated that Wyndham was prejudiced because the standard of review might change and that it had expended attorneys' fees. This is not enough to rise to the level of prejudice, as these would exist in any case. *Cf. Lincoln Composites*, 825 F.3d at 458 ("At oral argument, [the appellee] was unable to explain . . . how it was prejudiced."); *Johnson*, 929 F.3d at 575 ("The [appellants] have not identified any prejudice . . . . [T]hey fully addressed the merits of this claim in their brief.").

Therefore, the notice of appeal confers appellate jurisdiction over the district court's grant of summary judgment.

## B. *Summary Judgment*

We apply de novo review to the grant of summary judgment. *Richardson v. Omaha Sch. Dist.*, 957 F.3d 869, 876 (8th Cir. 2020). We "view[] the record in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Id.* (quoting *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011)). Summary judgment should be granted "if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

Kohlbeck, Hartfiel, and the Leakes do not challenge the district court's determination that they breached their contracts with Wyndham. Instead, they concede that "the sole issue in this case [i]s whether the contracts were invalid because of either duress or [fraudulent] misrepresentations made by [Wyndham]." Appellants' Br. at 36, 44 (internal quotation marks omitted).[4]

---

[4]In their briefing, the couples also assert that their interactions with Wyndham included "characteristics of procedural and substantive unconscionability."

### 1. *Duress*

Under Missouri law, "courts will enforce contracts according to their plain meaning, unless [a party is] induced by fraud, duress, or undue influence." *Costello Fam. Tr. v. Dean Fam. Lotawana Tr.*, 551 S.W.3d 561, 572 (Mo. Ct. App. 2018) (quoting *LaRue v. Alcorn*, 389 S.W.3d 215, 218 (Mo. Ct. App. 2012)). Duress exists when, "considering all surrounding circumstances, one party to the transaction was prevented from exercising his free will by threats or wrongful conduct of the other." *Id.* (quoting *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 370–71 (Mo. Ct. App. 1996)). Even so, the party asserting duress must act promptly to repudiate the contract because "[s]ilence and acquiescence for a considerable period after an agreement is allegedly executed under duress, action in accord with it, and acceptance of the benefits under it amount to a ratification of the agreement." *Slone*, 927 S.W.2d at 371.

We find that Kohlbeck, Hartfiel, and the Leakes ratified their contracts with Wyndham and thus cannot assert duress as a defense. The Leakes entered their active contract in May 2013. The Leakes then benefitted from the contract, taking multiple trips during the more-than-five-year period before they sued Wyndham in August 2018. *See id.* (receiving benefits under a contract for three years ratified the contract). Kohlbeck and Hartfiel entered their active contract in July 2017. Kohlbeck and Hartfiel also benefitted from this contract, including a trip in April 2018, before they sued Wyndham. *See Farmers' State Bank v. Day*, 226 S.W. 595, 596 (Mo. Ct. App. 1920) (finding a contract was ratified after five months of accepting benefits); *Custom*

_____

Appellants' Br. at 39, 47. This is an argument raised for the first time on appeal. *See Fleck v. Wetch*, 937 F.3d 1112, 1116 (8th Cir. 2019) ("As a general rule, we will not consider arguments raised for the first time on appeal as a basis for reversal." (internal quotation marks omitted)). Further, they did not raise unconscionability in their responsive pleadings, and "an affirmative defense not raised in the defendant's responsive pleadings is generally forfeited." *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 498 (8th Cir. 2010). Thus, we address only the couples' duress and fraudulent-misrepresentation arguments.

*Head, Inc. v. Kraft*, 430 S.W.2d 593, 596–97 (Mo. Ct. App. 1968) (finding that silence and acquiescence for 18 months ratified a contract); *Daniel E. Francis Props., L.C. v. Nat'l City Bank*, No. 4:06-cv-1244-JCH, 2006 WL 3412491, at \*4 (E.D. Mo. Nov. 27, 2006) (holding that acceptance of benefits for less than a year ratified the contract).

Additionally, neither couple has asserted that they were under duress from the time they entered their active contract to the time they sued Wyndham. *See Aurora Bank v. Hamlin*, 609 S.W.2d 486, 489 (Mo. Ct. App. 1980) (explaining that "[c]onduct in apparent recognition of a contract while duress continues does not constitute ratification"). In fact, the record belies such a conclusion. The Leakes were aware that they could rescind a contract within five days of signing and did so in 2015, and they withstood multiple other presentations that had the same level and type of pressures the Leakes identified in their complaint. Similarly, Kohlbeck and Hartfiel knew about the rescission option, walked away from new contracts under the same high-pressure circumstances of which they now complain, and literally ripped up a proposed contract when Wyndham—instead of helping them with payment complications resulting from Hartfiel's health condition—attempted to have them enter a new contract. Thus, even assuming that the couples did not ratify their contracts and waive the duress defense, these facts show that neither couple was prevented from exercising their free will.

### 2. *Fraudulent Misrepresentation*

In Missouri, the affirmative defense of fraudulent misrepresentation has the following elements:

> (1) [Wyndham] made a false, material representation; (2) [Wyndham] knew the representation was false or [it] was ignorant of its truth; (3) [Wyndham] intended that [the couples] act on the representation in a manner reasonably contemplated; (4) [the couples] w[ere] ignorant of the falsity of the representation; (5) [the couples] relied on the

-11-

representation's truth; (6) [the couples'] reliance was reasonable; and (7) [the couples'] reliance on the representation caused injury.

*Big A LLC v. Vogel*, 561 S.W.3d 28, 35 (Mo. Ct. App. 2018).

None of Wyndham's alleged misrepresentations rise to the level of fraudulent misrepresentation. First, both couples assert that they are relieved from their breaches of contract because Wyndham misrepresented the length of the owners' meetings turned sales presentations. But both couples acknowledge that the represented length of the presentations and the actual length were never the same; thus, they knew of the alleged falsity of the representation when they entered their active contracts. Further, neither couple has offered evidence that the length of the meetings was material to the contracts nor that they relied on the represented length of the meetings to enter into the contracts.

Second, both couples urge that Wyndham allegedly misrepresented the ability to rent out property to offset the couples' maintenance fees. On the one hand, the Leakes took advantage of the renting program but determined that because "Wyndham took 30 percent . . . of what they made by renting the property, and gave [the Leakes] the remaining percentage, which turned out to be minimal, it wasn't worth it." Appellants' App. at 424. The Leakes fail to assert the falsity of Wyndham's alleged misrepresentation. It is not enough that the Leakes were unhappy with the program. On the other hand, Kohlbeck and Hartfiel never attempted to rent out their property; thus, any misrepresentation did not cause their injury.

Third, the Leakes allege that Wyndham told them that their maintenance fees would minimally increase, though the fees greatly increased. But there is no record evidence that Wyndham knew that the fees would increase at more than a minimal rate. Thus, the Leakes' defense fails the second fraudulent-misrepresentation prong.

-12-

Further, in the Leakes' depositions, they admitted to knowing that the contract put no limit on fee increases.

Fourth, the Leakes contend that the rooms they were shown during sales presentations were a better quality than the rooms they were given during vacations. This claim fails the knowledge-of-falsity prong because the Leakes admit that they had received lower-quality accommodations multiple times since 2001. Thus, by the time they entered their active contract, they knew that the accommodations may not be of the exact same quality as the accommodations shown during sales presentations.

Fifth, the Leakes claim that Wyndham represented that they could travel anywhere at any time. But since the early 2000s, they knew that the ability to travel to specific locations was subject to availability, especially during holidays and at popular vacation locations. Therefore, the Leakes were not ignorant of any alleged falsity regarding travel availability.

## III. *Conclusion*

We affirm the district court's grant of summary judgment.

STRAS, Circuit Judge, concurring in the judgment.

Our review in this case should be limited to the order "designate[d]" in the notice of appeal. Fed. R. App. P. 3(c)(1)(B). That order did two things: it rejected the plaintiffs' attempt to use a motion for reconsideration to reargue the merits, *see* Fed. R. Civ. P. 60(b), and it set the specific amount of damages they owed on the counterclaims. The first was not an abuse of discretion, *see Broadway v. Norris*, 193 F.3d 987, 989–90 (8th Cir. 1999), and the second is not disputed at all. I would end the analysis there. *See Rosillo v. Holten*, 817 F.3d 595, 597 (8th Cir. 2016) ("Where an appellant specifies one order of the district court in his notice of appeal, but fails

to identify another, the notice is not sufficient to confer jurisdiction to review the unmentioned order.").

_____